NICHOLAS GRELLO, Appellant, v STANISLAW DASZYKOWSKI, Defendant. PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Respondent.

Second Department, July 18, 1977

*Shayne, Dachs, Weiss, Kolbrener, Stanisci & Harwood (Norman H. Dachs of counsel), for appellant.*

*Julius Gantman (James B. Reich of counsel), for respondent.*

MARGETT, J. The narrow issue in this case is whether a workmen's compensation lien filed by respondent Public Service Mutual Insurance Company against the proceeds of any recovery had by the plaintiff in an underlying personal injury action arising out of an automobile accident should be vacated. In a larger sense, this case poses the question whether New York's no-fault law operates to deprive persons seriously injured in the course of their employment of a portion of the total recovery to which they would previously have been entitled. If the question is, as 10 Appellate Division Justices have concluded thus far, to be answered in the negative, there remains an issue as to whether the no-fault law has effectively shifted a liability, previously borne by a tort-feasor's liability

insurance carrier, to the workmen's compensation carriers. I would conclude that it has.

The instant case arises out of an automobile accident which occurred on April 14, 1974, while the plaintiff was acting within the scope of his employment. Plaintiff filed for both no-fault and workmen's compensation benefits and has received moneys from both sources. Ironically, respondent Public Service Mutual Insurance Company was the carrier under both forms of coverage. Nevertheless, in accordance with the provisions set forth in the no-fault law (Insurance Law, § 671), medical expenses and a certain percentage of plaintiff's loss of earnings were paid by respondent as workmen's compensation carrier while a further percentage of plaintiff's loss of earnings was paid by respondent in its capacity as no-fault carrier.

Plaintiff also commenced an action against the alleged third-party tort-feasor. Respondent filed a notice of lien against any recovery and, thereafter, plaintiff moved to vacate the lien. Plaintiff contended that since the total of his health service expenses and loss of earnings did not exceed $50,000, he could not obtain any recovery from the alleged tort-feasor for such health service expenses or loss of earnings. Since respondent had reimbursed plaintiff solely for such health service expenses and loss of earnings, it was argued that no lien could attach to a recovery which amounted to compensation for noneconomic loss—i.e. "pain and suffering".

Special Term denied plaintiff's motion, but opined that "the plaintiff herein is placed in an unreasonable and inequitable position by the strict application of § 29, subd. 1 of the Workmen's Compensation Law and the relevant Sections of the Insurance Law." Rectification was deemed a matter for the Legislature. While I agree that legislative consideration is in order, I believe that such consideration should be directed to the apportionment of risks as between the various categories of insurers. If, as respondent suggests, the current apportionment of those risks is undesirable because of economic considerations, the burden of suffering the current state of affairs should be borne by the compensation carriers—and in a broader sense by society at large—rather than by the injured individual victims of automobile accidents.

Both the Workmen's Compensation Law and the Comprehensive Automobile Insurance Reparations Act (no-fault law) are ultimately concerned with the compensation of the injured party. Workmen's compensation is designed to shift the risk of

loss of earning capacity caused by industrial accidents to industry and ultimately the consumer, regardless of fault *(Matter of Wolfe v Sibley, Lindsay & Curr Co.,* 36 NY2d 505). It is intended to secure speedy, certain and adequate provision for the support of dependents, and to give every workman in specified trades compensation for injury received while in the course of his employment *(Skakandy v State of New York,* 188 Misc 214, affd 272 App Div 153, affd 298 NY 886). When it was first enacted, in the early part of this century (L 1913, ch 816), the Workmen's Compensation Law represented a revolutionary departure from the fault system of traditional tort liability, which provided the exclusive means of redress at that time. But by the same token, workmen's compensation was conceived and existed within that traditional system; of necessity certain segments of the Workmen's Compensation Law were geared toward that system. The lien against a claimant's recovery in a third-party action acknowledged the fact that third-party actions based on fault were intended to compensate an injured party for his entire loss—both economic and noneconomic. Since the injured party had already been compensated for a portion of that which he would recover from the third-party tort-feasor, it was entirely just and appropriate for the compensation carrier to regain that which it had previously paid; otherwise the injured party would be doubly compensated *(Matter of Amo v Empsall-Clark Co.,* 9 AD2d 852; *Matter of Berenberg v Park Mem. Chapel,* 286 App Div 167).

The concept of no-fault automobile insurance evolved in large part from the social success of workmen's compensation (James, The Columbia Study of Compensation for Automobile Accidents: An Unanswered Challenge, 59 Col L Rev 408; Malone, Damage Suits and the Contagious Principle of Workmen's Compensation, 12 La L Rev 231). It was said by the Governor, upon his approval of New York's enactment of no-fault, that the law "assures that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault" (NY Legis Ann, 1973, p 298). But clearly, although many of the same principles underlie both workmen's compensation and no-fault, the latter notion is more than a mere offshoot of the fault system; it is a permutation of the very system itself.

Thus, "[n]otwithstanding any other law, in any action by or on behalf of a covered person against another covered person

for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, *there shall be no right of recovery* for non-economic loss, except in the case of a serious injury, or *for basic economic loss"* (Insurance Law, § 673, subd 1 [emphasis supplied]). "Basis economic loss" is defined, in essence, to include (a) all reasonable and necessary medical expenses, (b) loss of earnings up to $1,000 per month for not more than three years from the date of the accident causing the injury and (c) all other reasonable and necessary expenses incurred, up to $25 per day for not more than one year from the date of the accident causing the injury (Insurance Law, § 671, subd 1). Since no action may be brought for such "basic economic loss", the injured victim is reimbursed for basic economic loss by means of "first party benefits" payable by his own insurer, if he is a motorist, or by the insurer of the car that struck him, if he is a pedestrian. These "first party benefits" are reduced, however, by (a) 20% of those lost earnings which are considered basic economic loss,[1] (b) "amounts recovered or *recoverable* on account of such injury under state or federal laws providing social security disability benefits, or workmen's compensation benefits"[2] and (c) "any amounts deductible under the applicable insurance policy" (Insurance Law, § 671, subd 2 [emphasis supplied]). First-party benefits are promptly payable to the injured party and are overdue if not paid within 30 days after the claimant supplies proof of the fact and amount of loss sustained (Insurance Law, § 675, subd 1).

Under the no-fault system then, the injured victim is

---

1. To illustrate the operation of the law with respect to lost earnings, suppose an injured party earned $2,000 per month. One thousand dollars would constitute basic economic loss for which no action could be maintained. One thousand dollars would be recoverable in an action at law. Of the $1,000 which represents basic economic loss, first-party benefits of $800 (80%) would be payable.

2. The use of the term "recoverable" indicates that the no-fault insurer may deduct the amount of such benefits upon a mere showing of their availability; the right of the insurer to deduct is not contingent upon their actual receipt. In essence, the Legislature has made the workmen's compensation carrier the primary carrier. An injured party may not, therefore, "elect" between workmen's compensation benefits and no-fault benefits.

The Connecticut, Minnesota, New Jersey, and Utah acts are of similar effect (Conn Gen Stat Rev § 38-333, subd [c]; Minn Stat Ann, § 65B.61, subd 2; NJ Stat Ann, § 39:6A-6; Utah Code Ann, § 31-41-7, subd [3], par [a]). New Jersey's provision has been described as a trap for the unwary claimant who fails to apply for workmen's compensation benefits (Schermer, Automobile Liability Insurance, § 5.03; see Crystal, No Fault—One Year Later, 97 NJLJ 225 [1974]).

promptly and substantially compensated, quite without regard to any considerations of negligence, for what is aptly termed basic economic loss. Traditional tort concepts remain viable only where the injured party sustains "economic" losses in excess of or of longer duration than "basic economic loss", or where a "serious" injury has been sustained (e.g., death, dismemberment, significant disfigurement, a compound or comminuted fracture, reasonable and customary medical expenses in excess of $500) (Insurance Law, § 671, subd 4). In the former case, an action can be brought to recover the amount by which actual economic losses exceeded or were of longer duration than "basic economic loss". In the latter case, an action can be brought to recover for "non-economic loss"— "pain and suffering and similar non-monetary detriment" (Insurance Law, § 671, subd 3).

These comprehensive changes in the system of compensation for automobile accident victims are underscored by the fact that a no-fault carrier may not assert a lien against the proceeds of any recovery obtained by the injured party from a tort-feasor.[3] The reason for this is so obvious as to be elementary; since an injured person is precluded from recovering anything from a tort-feasor for "basic economic loss", and since no-fault compensation covers only "basic economic loss", any lien imposed by a no-fault carrier would deprive the injured party of a segment of the *total* indemnification provided by law. In short, a seriously injured person or one with losses in excess of or of greater duration than "basic" economic losses, could not be made whole.

The position advanced by respondent—that a workmen's compensation lien is valid as against *any* recovery from a third party—is untenable in the automobile liability context by virtue of the massive and comprehensive restructuring of the law in that area. In the case at bar, respondent compensated plaintiff only for medical expenses and lost earnings.[4] It

---

3. This is true where the injured party who has obtained no-fault benefits recovers from a "covered person"—in essence, any New York motorist (with the exception of motorcyclists) who obeys the law and carries the required insurance protection, and any nonresident motorist who has no-fault coverage for excursions into New York. It should be noted that no-fault carriers who have compensated injured person *do* have a lien where the injured person recovers from a "non-covered" person (Insurance Law, § 673, subd 2) but no limitations are imposed on the damages that may be recovered from a "non-covered" person. Thus a suit against a noncovered person is, in all respects, governed by traditional fault principles and *full* recovery (for all economic and noneconomic loss) is possible.

4. Although it appears that plaintiff received scheduled loss compensation on the

appears that all compensation came within the statutory definition of "basic economic loss".[5] It is patent that respondent seeks to attach a lien to potential benefits representing a loss for which it never compensated the plaintiff. Such a result finds no justification in law or in reason.

It is clear that by reason of the enactment of the no-fault law, as construed by both a majority of this court and by the Third Department in *Matter of Granger v Urda* (54 AD2d 377), respondent, and workmen's compensation carriers in general, have "lost" a potential lien in certain categories of cases. But it is not the plaintiff who benefits at the respondent's expense. Rather, any "direct" loss incurred by respondent inures to the benefit of the alleged tort-feasor's liability carrier. The facts of the *Granger* case illustrate this quite graphically.

Mr. Granger sustained personal injuries in a work-related automobile accident. He received workmen's compensation payments in the sum of $7,832.72 and medical payments from the compensation carrier in the sum of $1,090.84, for a total of $8,923.56. In a negligence action against the third-party tort-feasor, Granger was awarded $52,759.52 by the jury. Pursuant to the no-fault law[6] the trial court deducted from this verdict the sums of $10,010 for lost wages, $10,608.31 for future wages lost until three years after the date of the accident and $1,003.98 for medical services. These sums, totaling $21,622.29

basis of a partial loss of use of his legs and right hand, and a lump-sum settlement on the basis of facial disfigurement, it has been consistently held that the purpose of a schedule award is to compensate the employee for immediate or prospective loss of earnings or earning capacity (see *Matter of Marhoffer v Marhoffer*, 220 NY 543; *Matter of Wilkosz v Symington Gould Corp.*, 14 AD2d 408, affd 14 NY2d 739). In facial disfigurement cases the same theory and the relationship between any kind of compensation and loss of earnings or earnings capacity, has been recognized *(Matter of Wilkosz v Symington Gould Corp., supra)*.

5. It is undisputed that plaintiff was earning less than $1,000 per month and that the total of his health care expenses and loss of earnings (including the scheduled loss compensation) did not exceed $50,000. It does appear that plaintiff's scheduled loss compensation was spread out in weekly payments over the period April 15, 1974 until May 17, 1977. To the extent, if any, that such payments represent loss of earnings for a period subsequent to three years from the date of the accident, they *are* recoverable in a tort action and are subject to the compensation carrier's lien.

6. Subdivision 3 of section 673 of the Insurance Law permits "basic economic loss" to be pleaded and proved even where there is no right to recover for said basic economic loss, "to the extent that it is relevant to the proof of noneconomic loss." Thus jury verdicts under the no-fault system must be reduced by the amount of a plaintiff's "basic economic loss". The reduction is "on paper" and results in an appropriate figure which is reduced to judgment.

represented "basic economic loss" for which Granger could not recover from the tort-feasor because of the prohibition contained in section 673 of the Insurance Law. The resulting *judgment* in the sum of $31,137.23 entered on behalf of Granger was thus comprised solely of damages for pain and suffering and lost earnings commencing three years after the date of the accident. Granger's workmen's compensation carrier claimed a lien of $8,923.56 against this $31,000 judgment, which lien was held to be invalid.

If one analyzes the aforesaid facts, it is clear that the compensation carrier's "loss" directly benefited the tort-feasor's liability insurer. The amount of the nearly $9,000 lien was part of the "paper" deduction made from the *verdict* in arriving at the *judgment.* This shift in insurance liabilities formed the basis for the two dissenting opinions.

Mr. Justice GREENBLOTT, in a dissenting opinion, indicated that the "loss" should fall on Granger's no-fault carrier. He arrived at this result by concluding that where there is a third-party recovery by one who has received workmen's compensation benefits, there are in practice no compensation benefits "recovered or recoverable" within the meaning of paragraph (b) of subdivision 2 of section 671 of the Insurance Law. Compensation benefits are not "recovered or recoverable" because of the inviolability of the compensation lien. Hence, the set-off provision contained in paragraph (b) of subdivision 2 of section 671 does not apply where there is a third-party recovery. Mr. Justice GREENBLOTT concluded that Granger "should be required to proceed against the no-fault carrier to enforce his rights against it" *(Matter of Granger v Urda,* 54 AD2d 377, 382, *supra).*

Mr Justice HERLIHY, in his dissenting opinion, stated (p 683) that the "loss" should fall on the tort-feasor's liability carrier. He contended that "[a]s a matter of law the statutory prohibition in section 673 of the Insurance Law [prohibiting suits for basic economic loss] should not be applied to actions brought by a recipient of workmen's compensation benefits, to the extent of a workmen's compensation lien on any recovery." Accordingly, Mr. Justice HERLIHY concluded (p 683) that "[t]he error in this case is in regard to the judgment entered in the action against * * * [the tort-feasors] and any relief * * * [Granger] might seek will have to be in regard thereto and not against a no-fault insurance carrier."

Although it may be desirable to shift the "liability" now borne by workmen's compensation carriers to no-fault or automobile liability insurers, I am unable to conclude that such a result is possible without tremendously straining the language and scheme of the no-fault law as it now exists. More importantly, any attempt to shift the respective liabilities within the framework of the current law would project the injured victim into an uncharted and interminable morass of legal maneuvering.

As has already been noted, paragraph (b) of subdivision 2 of section 671 of the Insurance Law provides that first-party benefits payable by no-fault carriers shall be reduced by amounts recovered or recoverable as workmen's compensation benefits. Since the statute conditions this setoff upon mere availability and not upon actual receipt, I fail to see how benefits which are "recoverable" become any less so merely because the injured person eligible for such benefits might have to refund them after a recovery from a third-party tortfeasor.[7] No doubt, this very point would be strenuously argued by any no-fault carrier being sued by an injured person who had been compelled to remit workmen's compensation benefits to the compensation carrier. The injured party would then be faced with the prospect of lengthy litigation concerning this point.

Likewise, any adjustment to the amount recoverable in a tort action would be in complete contravention of the statutory scheme limiting recovery (see Insurance Law, § 673, subd 1). A liability insurance carrier could be expected to actively resist any such upward revision of its liability. Even more significantly, settlement negotiations would (at least prior to an ultimate Court of Appeals adjudication of the question) be hampered by a state of uncertainty.[8] Since one of the basic purposes of the no-fault law was the elimination of court

---

7. If the set-off provisions in paragraph (b) of subdivison 2 of section 671 of the Insurance Law applied only to amounts "recovered", the argument that the no-fault carrier could not claim a setoff where the compensation lien resulted in a remittal of all compensation benefits paid might be tenable. The net result would be that nothing had been recovered.

8. Under the no-fault law, it is clear that the liability insurer need compensate the injured victim only for noneconomic loss and economic loss in excess of basic economic loss. While compensation for noneconomic loss cannot be quantified with any high degree of precision, practice teaches us that the dynamics of the negotiation and settlement process will insure that compensation for noneconomic loss will be just that, in practice as well as in theory.

congestion (see Governor's Memorandum, NY Legis Ann, 1973, p 298), such a result would be undesirable.

Another fundamental purpose of the no-fault law was to provide substantial premium savings to all New York motorists (Governor's Memorandum, *supra*). It appears that, in part at least, such savings have been effected by shifting part of the loss previously borne by the automobile liability carriers to the workmen's compensation carriers. If this apparent shift is undesirable, it can be readily corrected by the Legislature.[9] Pending such corrective action, both the Workmen's Compensation Law and the no-fault law should be construed most favorably to the injured victims of automobile accidents.

Accordingly, we hold that insofar as automobile liability recoveries are concerned, a workmen's compensation carrier may attach a lien only to the extent that workmen's compensation benefits exceed or are of longer duration that a victim's "basic economic loss", as that term is defined in subdivision 1 of section 671 of the Insurance Law.

SHAPIRO, J. (concurring). I agree with my brother MARGETT that this court should reverse the order and grant the plaintiff's application to vacate the lien filed by the plaintiff's employer's workmen's compensation insurer, the lienor respondent, Public Service Mutual Insurance Company (Public Service), pursuant to section 29 of the Workmen's Compensation Law, on the proceeds of any recovery by the plaintiff in his action against the owner and operator of the other motor vehicle involved in the accident in which he suffered the personal injuries for which he is suing. However, I reach my conclusion on grounds which differ from those relied on by him.

I also agree that legislative changes in the statutes here under consideration are required in order to avoid the possi-

---

9. The compensation carrier could, for example, be included with the no-fault carriers in section 674 of the Insurance Law. That section provides that any insurer liable for the payment of first-party benefits (i.e.—no-fault carriers) "shall have the right to recover the amount of such benefits so paid from the insurer of any other covered person if and to the extent that such other covered person would have been liable, but for the * * * [limitations imposed on law suits by the no- fault law],to pay damages in an action at law." (Insurance Law, § 674, subd 1.) The right of recovery must be pursued through arbitration (Insurance Law, § 674, subd 2) and the intramural adjustment of losses thus provided is independent of the liability policy actually carried by the tort-feasor since "[t]he liability of an insurer imposed by this section shall not affect or diminish its obligations under any policy of bodily injury liability insurance." (Insurance Law, § 674, subd 3.)

bility of the loss by one situated as is the plaintiff here of his recovery for noneconomic loss and for any basic economic loss he suffered in excess of $50,000 of the benefits receivable by him as workmen's compensation payments, a result which would occur if the order here under appeal were allowed to stand.

Having said all that, I believe that there is an issue which is dispositive of this appeal and that flows from the fact that Public Service is both the compensation carrier and the plaintiff's no-fault insurer. The question therefore which I pose is whether Public Service, as plaintiff's no-fault carrier, by having withheld from him a sum equal to the workmen's compensation benefits receivable by him under paragraph (b) of subdivision 2 of section 671 of the Insurance Law, has not thereby satisfied the lien which it would otherwise have under section 29 of the Workmen's Compensation Law. I believe that it has.

Since Mr. Justice MARGETT in his opinion neither sets forth a statement of the facts nor the text of the statutes here involved, and as I believe both are necessary to insure a clear understanding of the reasons for my conclusion, I have set them forth below.

### THE RELEVANT STATUTES

Section 29 of the Workmen's Compensation Law, which deals with remedies of employees and subrogation, provides, in relevant part: "1. If an employee entitled to compensation under this chapter be injured * * * by the negligence or wrong of another not in the same employ, such injured employee * * * need not elect whether to take compensation and medical benefits under this chapter or to pursue his remedy against such other but may take such compensation * * * and at any time * * * pursue his remedy against such other subject to the provisions of this chapter * * * In such case, the * * * insurance carrier liable for the payment of such compensation * * * shall have a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise * * * to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it and to such extent such recovery shall be deemed for the benefit of such * * * carrier."

Section 671 of the Insurance Law provides, in relevant part:

"§ 671. Definitions.

"1. 'Basic economic loss' means, up to fifty thousand dollars per person:

"(a) all reasonable and necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and, (iv) any other professional health services; all with- out limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury;

"(b) loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury; and

"(c) all other reasonable and necessary expenses incurred, up to twenty-five dollars per day for not more than one year from the date of the accident causing the injury.

" 'Basic economic loss' shall not include any loss incurred on account of death.

"2. 'First party benefits' means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle in this state, less:

"(a) twenty percent of lost earnings pursuant to paragraph (b) of subdivision one of this section;

"(b) amounts recovered or recoverable on account of such injury under state or federal laws providing social security disability benefits or workmen's compensation benefits; and

"(c) any amounts deductible under the applicable insurance policy.

"3. 'Non-economic loss' means pain and suffering and similar non-monetary detriment.

"4. 'Serious injury' means a personal injury:

"(a) which results in death; dismemberment; significant disfigurement; a compound or comminuted fracture; or perma-

nent loss of use of a body organ, member, function, or system; or

"(b) if the reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services necessarily performed as a result of the injury would exceed five hundred dollars."

Section 672 of the Insurance Law provides, in relevant part:

§ 672. Entitlement to first party benefits; additional financial security required.

"1. Every owner's policy of liability insurance issued on a motor vehicle in satisfaction of the requirements of articles six or eight of the vehicle and traffic law shall also provide for; every owner who maintains another form of financial security on a motor vehicle in satisfaction of the requirements of such articles shall be liable for; and every owner of a motor vehicle required to be subject to the provisions of this article by subdivision two of section three hundred twenty-one of the vehicle and traffic law shall be liable for; the payment of first party benefits to:

"(a) persons, other than occupants of another motor vehicle, for loss arising out of the use or operation in this state of such motor vehicle; and

"(b) the named insured and members of his household for loss arising out of the use or operation in this state of an uninsured motor vehicle."

Section 673 of the Insurance Law provides:

"§ 673. Causes of action for personal injury.

"1. Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss.

"2. In any action by or on behalf of a covered person, against a non-covered person, where damages for personal injuries arising out of the use or operation of a motor vehicle in this state may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries shall have a lien against any recovery to the extent of benefits, paid or payable by it to the covered person. No such action may be compromised by the covered person except with the written consent of the insurer, or with the approval of the court, or

where the amount of such settlement exceeds fifty thousand dollars. The failure of such person to commence such action within two years after the accrual thereof shall operate to give the insurer a cause of action for the amount of first party benefits paid or payable against any person who may be liable to the covered person for his personal injuries, which cause of action shall be in addition to the cause of action of the covered person; provided, however, that in any action subsequently commenced by the covered person for such injuries, the amount of his basic economic loss shall not be recoverable.

"3. Where there is no right of recovery for basic economic loss, such loss may nevertheless be pleaded and proved to the extent that it is relevant to the proof of noneconomic loss."

### THE FACTS

Plaintiff here sues to recover damages for the personal injuries he suffered in an automobile accident which occurred while he was operating a motor vehicle owned by his employer. His action is directed against the owner and operator of the other motor vehicle involved in the accident. Plaintiff seeks to recover as his damages his noneconomic loss resulting from the personal injuries he suffered in the accident and that part of his economic loss resulting therefrom which exceeds the "basic economic loss", as that term is defined in subdivision 1 of section 671 of the Insurance Law, which deals with "no-fault" coverage.

Plaintiff's employer's workmen's compensation insurer at the time of the accident was Public Service, which also provided plaintiff's employer with no-fault liability insurance on the vehicle plaintiff was operating at the time of the accident. Pursuant to its workmen's compensation coverage, Public Service paid plaintiff's medical and hospital expenses and the sum of $380 per month for lost wages until December 10, 1974 and $320 per month thereafter. As required by its automobile liability insurance coverage of plaintiff's employer, it also paid plaintiff the first-party benefits to which he was entitled under sections 671 and 672 of the Insurance Law, *consisting of the balance of his lost wages.* Thus Public Service was deducting from plaintiff's "first party benefits" that portion of the basic economic benefits to which he was entitled under sections 671 and 672, because of the payments made to him under the workmen's compensation insurance policy covering his employer.

Nevertheless, when plaintiff brought this action against the driver of the other motor vehicle, Public Service, as authorized by section 29 of the Workmen's Compensation Law, filed a notice of lien against the proceeds of any recovery plaintiff would receive from the defendant to the extent of the total amount of compensation awarded the plaintiff under the Workmen's Compensation Law. Plaintiff then moved to vacate the notice of lien on the ground that, since his basic economic loss did not exceed the $50,000 limitation contained in the definition of that term in subdivision 1 of section 671, any recovery or settlement would be solely for pain and suffering, which is defined as noneconomic loss under subdivision 3 of that section and permitted by subdivision 1 of section 673.

The Special Term, in the order here under appeal, declared that Public Service, as compensation carrier, has a lien on the proceeds of any recovery by plaintiff in this action and therefore denied his motion to vacate the notice of lien.

### THE LEGISLATIVE INTENT MANIFESTED IN THE RELEVANT STATUTES

Subdivision 1 of section 29 of the Workmen's Compensation Law declares that a carrier of workmen's compensation insurance which pays compensation (the payments provided for in section 14 for loss of wages and the medical, surgical, optometric or other attendance or treatment, nurse and hospital service necessitated by the injury of an employee, for which the employer is made liable under section 13 of the same law) "shall have a lien on the proceeds of *any* recovery" by the injured employee from "another not in the same employ" whose "negligence or wrong" caused his injury (emphasis supplied). That provision, in its present form, dates from 1937 (L 1937, ch 684) and, as I noted in *Koutrakos v Long Is. Coll. Hosp.* (47 AD2d 500, 505, affd 39 NY2d 1026), "reflects the inescapable conclusion that the changes thus made in the law [allowing a qualified injured employee both to elect to take compensation and to pursue his third-party remedies within specified time limits] have been for the benefit of an injured employee". At the same time, the Legislature, in order to prevent an employee injured by one not a fellow employee from receiving double reimbursement for his injuries, established a lien, such as Public Service here seeks, to allow the payer of workmen's compensation benefits to the injured employee to recoup its payments from the injured employee's presumably full recovery of his damages from the negligent

third party. This legislative provision, in addition to limiting an injured employee's *total* recovery for the damages he suffered to his actual damages and denying him recovery in excess thereof from his employer's compensation insurer and the third-party defendant, also helped insure against inflation of the cost of workmen's compensation insurance resulting from such potential double payment of damages.

That the factor of cost was of concern to the Legislature is evidenced by the fact that the provision in the Constitution of the State of New York (art I, § 18) specifically authorizing it to adopt laws for the protection of the lives, health, or safety of employees and to provide for workmen's compensation insurance contains a final proviso that "all moneys paid by an employer to his employees or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the business of the employer." It is also evidenced by the limitations imposed on the benefits receivable by an injured employee, such as denial of any compensation for the first seven days of disability (Workmen's Compensation Law, § 12) and the limitation of payment of wages to an injured employee during temporary disability to two thirds of the employee's average weekly wages (Workmen's Compensation Law, § 15, subd 2).

The provision established by section 29 of the Workmen's Compensation Law giving the compensation carrier a lien on any recovery received from a negligent third party not a fellow employee of the injured complainant was clearly proper in 1937, when there was no statute providing for no-fault recovery by a person injured in a motor vehicle accident for the basic economic loss he suffered. But when the no-fault provisions of article XVIII were added to the Insurance Law in 1973 (L 1973, ch 13) providing for different treatment of claims for basic economic loss and for noneconomic loss, both of which, prior to the enactment of the article, had been an integral part of any recovery in any action for personal injuries brought by an injured employee against a negligent defendant, it became necessary to make some provision in the no-fault law to reflect this severance of the two different kinds of damages recoverable by such a plaintiff.

In an effort to meet this need the Legislature provided, in paragraph (b) of subdivision 2 of section 671 of the Insurance Law, that the basic economic loss recoverable by the plaintiff

under that law should not include any "amounts recovered or recoverable on account of such injury under state * * * laws providing * * * workmen's compensation benefits". In so doing it may well have been following the pattern it set in subdivision 1 of section 29 of the Workmen's Compensation Law to prevent double reimbursement for the same economic loss arising out of his injuries by a beneficiary of both workmen's compensation coverage and no-fault coverage.

The over-all purpose of the enactment of article XVIII of the Insurance Law, the no-fault law, was set forth by the Governor in his memorandum of approval (NY Legis Ann, 1973, p 298). He declared therein, in relevant part: "With the enactment of this measure, the present automobile insurance system—a system which costs too much, takes too long to pay off and delivers too little protection—will be cast aside. In its stead will be a new insurance reparations system which—assures that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault;—will eliminate the vast majority of auto accident negligence suits, thereby freeing our courts for more important tasks."

To implement the second goal set forth above, the Legislature, in subdivision 1 of section 673 of the Insurance Law, denied any right of recovery for noneconomic loss, "except in the case of a serious injury", or for basic economic loss, in any action for personal injuries arising out of negligence in the use of a motor vehicle between persons covered by no-fault insurance. The Legislature, in subdivision 2 of section 673, did allow a covered person to bring an action for personal injuries arising out of the use of a motor vehicle against a noncovered person but, again following a pattern similar to section 29 of the Workmen's Compensation Law, it provided that an insurer which paid or was liable for first-party benefits on account of such injuries "shall have a lien against any recovery to the extent of [basic economic loss] benefits paid or payable by it to the covered person." Thus the Legislature made clear its intention that one covered by no-fault insurance who nevertheless under the law could and did bring suit for personal injuries arising out of the use of a motor vehicle could recover from all of his sources of reimbursement, workmen's compensation, no-fault and his suit for personal injuries against another, no more than his total damages and his recovery in his personal injury suit would also be subject to a

lien by the no-fault insurer for any payments it was required to make to him under its no-fault policy.

But, in subdivision 1 of section 673, the Legislature barred any action for basic economic loss, or for noneconomic loss, where there was no serious injury, by or on behalf of a covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this State. The ban was based on the fact that each covered person would recover for his basic economic loss from his own no-fault liability insurer and that to allow such a person to sue another for the same damages would not only give him double recovery but would also negate the purpose of the no-fault law, which was to ease the burden on the courts by providing for prompt payment, without litigation, by each insurer of its insured's basic economic loss.

The instant case, however, raises a question for which the Legislature made no specific provision. It left untouched the broad language of section 29 of the Workmen's Compensation Law granting the workmen's compensation insurance carrier liable for the payment of compensation benefits "a lien on the proceeds of any recovery" from the negligent non-fellow employee causing the covered employee's injury. It also authorized the no-fault insurer responsible for the payment of first-party benefits to the injured employee to deduct from those benefits any amounts recovered or recoverable on account of such injury as workmen's compensation benefits. Thus, on the one hand the no-fault statute made it clear that the no-fault insurer need not pay the beneficiary under its policy his workmen's compensation while, on the other hand, by failing to limit the workmen's compensation carrier's lien on any recovery by the injured employee in a suit against a third party to recover that part of the recovery which included damages consisting of the insured's basic economic loss, it allowed the compensation carrier to impose its lien on a recovery by the insured of what were solely noneconomic losses. Thus interpreted, the provision would make the injured plaintiff a self-insurer for that portion of his basic economic loss. I find nothing in the history of the no-fault legislation to indicate that the Legislature intended any such result—a result which flies in the face of the very purpose of the no-fault statute as it was interpreted by Governor Rockefeller in his memorandum approving that law.

But I also find nothing in the no-fault law, or in its legisla-

tive history, which reflects an intent on the part of the Legislature such as Mr. Justice MARGETT finds—that in such a case the section 29 lien be eliminated—for, as I have indicated, there is much in the Workmen's Compensation Law and in section 18 of article I of the State Constitution authorizing the adoption of that law, which manifests the legislative concern with a minimization of the cost of workmen's compensation insurance. That cost is specifically declared a business cost for employers. Further, the benefits available under such insurance are far more restrictive than those available under no-fault insurance. While there is also an expression in the Governor's message of an intent by the Legislature to lessen the cost of auto liability insurance, far more stress is given there to the need to speed up the payment of auto liability insurance benefits, to expand those benefits, to free the courts of the massive load of auto accident litigation and, most importantly, to assure to "every auto accident victim" compensation "for substantially all of his economic loss". Hence I can find no basis for shifting the burden of that part of the basic economic loss consisting of the plaintiff's workmen's compensation benefits to either the plaintiff or his compensation carrier. The indicators set forth above point to liability for those benefits resting with the no-fault carrier (see the dissenting opinion of Mr. Justice GREENBLOTT in *Matter of Granger v Urda,* 54 AD2d 377, 382).*

But here the order appealed from should be reversed for a reason not adverted to in the opinion of Mr. Justice MARGETT. Section 29 sets forth that the lien it authorizes shall be "to the extent of the total amount of compensation awarded

---

* I do not agree with Mr. Justice MARGETT's reading of the impact of the use of the word "recoverable" in paragraph (b) of subdivision 2 of section 671. That word means only that an injured party who has both workmen's compensation and no-fault insurance may not elect to impose on his no-fault insurer the cost of his workmen's compensation benefits, but must seek his remedy to its full extent from the compensation insurer and obtain only the balance from his no-fault insurer. I find in the use of the word no intent to shift to the workmen's compensation carrier the ultimate burden of the compensation payment. Rather, since the no-fault insurer has a wider constituency, all persons owning motor vehicles within the State, as contrasted with the constituency of workmen's compensation insurer's, all employers in covered industry within the State, I would tend to the view that the legislative intent is that the no-fault insurer, rather than the compensation insurer, should bear that burden.

I agree, however, that there is a serious question as to whether the injured victim who is faced with the need to recover the workmen's compensation payments due him from the no-fault insurer after the compensation carrier has enforced its lien on his noneconomic loss recovery can, under the law, bring suit for such recovery (see Insurance Law, § 673, subd 1).

under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it [the compensation insurer]". Here the lienor, *because of its position as both compensation carrier and no-fault carrier of plaintiff's employer,* and, in accordance with paragraph (b) of subdivision 2 of section 671 of the Insurance Law, has already deducted from plaintiff's no-fault benefits an amount equal to the compensation payments to plaintiff. Hence, Public Service's compensation claim has not only been fully reimbursed in the total amount of compensation awarded, but it will also be fully reimbursed for any further compensation payment it may have to make to him since any such payments will also be basic economic benefits which will trigger further liability by Public Service to plaintiff on its no-fault insurance policy in at least the same amount. Since the claim which the lien enforces has been fully satisfied, there is no basis for the imposition of a workmen's compensation lien. Whether Public Service charges the amount it is compelled to pay to plaintiff on its compensation ledger or its no-fault ledger is an internal matter for it to decide—subject to any supervision thereof by the New York State Insurance Department.

However, in our case, I find no need to decide that question since here the lienor respondent, being assured of reimbursement of its compensation payments by deducting them from the no-fault benefits it must pay the plaintiff, has no basis for a lien under section 29 of the Workmen's Compensation Law and it makes no claim for a lien under section 673 of the Insurance Law. To clear up any possible confusion, however, the Legislature should make it clear whether the lien provision of section 29 of the Workmen's Compensation Law or the applicable provisions of sections 671 and 673 of the Insurance Law should take priority. Certain it is, however, that the injured plaintiff should not be deemed to be his own self-insurer (cf. *Matter of Adams [Government Employees Ins. Co.],* 52 AD2d 118).

DAMIANI, J., concurs with MARGETT, J.; SHAPIRO, J., concurs in the result, with an opinion; HOPKINS, J. P., and RABIN, J., dissent and vote to affirm the order for the reasons set forth in the dissenting opinion of GREENBLOTT, J., in *Matter of Granger v Urda* (54 AD2d 377, 381-382).

Order of the Supreme Court, Nassau County, dated May 7,

1976, reversed, on the law, with $50 costs and disbursements, and application to vacate the lien filed by respondent granted.