*231 OPINION OF THE COURT
Alan J. Saks, J.
The issue posed by the jury’s verdict in this action, one of apparently first impression, is whether CPLR 1610 (limited liability of persons jointly liable) is rendered inapplicable by virtue of the legal impossibility of full exposure to judgment of the major tortfeasor.*
This is an action for personal injuries arising out of an accident on May 8, 1988 when plaintiff Ernestine Washington was seriously injured when the vehicle in which she was a passenger struck a post supporting an elevated rapid transit line in the Bronx. The vehicle was owned by plaintiff’s sister, defendant Nancy Bridges. It was registered in Texas and was uninsured. The driver was defendant Carlos Gregorio, who was unlicensed, illiterate, and, apparently, a Guatamalan immigrant. Because the defense of these defendants was assumed by the Motor Vehicle Accident Indemnification Corporation (MVAIC), plaintiff may not enforce a judgment against personal assets of Bridges or Gregorio (if there be any such assets) and is thus limited to collection of a maximum of $10,000 from MVAIC.
The other defendant is Consolidated Edison of New York, Inc. (Con Ed), against which plaintiff’s claim was predicated on a theory that the vehicle had gone out of control as a result of passing over and through the area of a work site adjacent to a Con Ed manhole cover and casing.
Since the action against Con Ed was not predicated on its use or operation of a motor vehicle, plaintiff could have sued Con Ed for full common-law damages (Donaldson v Macey, 122 Misc 2d 256), but chose to limit her claims to noneconomic loss, i.e., pain and suffering. Since MVAIC has paid for her "No Fault” benefits for hospital/medical care, it commenced a separate declaratory judgment action against Con Ed, which was severed and not a subject of the trial of the instant action.
The jury rendered a verdict apportioning 80% fault to Gregorio and 20% to Con Ed, and assessed damages as $250,000 for past pain and suffering and $500,000 for future pain and suffering. Defendant’s motions directed against the verdict were denied by this court from the Bench, except that at the joint request of plaintiff and Con Ed the court scheduled *232 briefing of the contention made by plaintiff that CPLR 1601 should be held inapplicable to Con Ed based on the legal limitations of recovery on the claim against the codefendant. (Since Con Ed was not held liable by reason of its use, etc., of a motor vehicle or motorcycle, it is clear that the exemption contained in section 1602 [6] does not apply.)
In resolving the legal issue posed, this court has not given any weight to the solvency of Bridges/Gregorio and the fact that plaintiff appears to remain on good terms with both of them. Thus, even though it is highly dubious as to whether plaintiff would have been able to collect more than $10,000 even if the vehicle had the minimum required coverage in that amount, and even though it is thus arguable that the legal impossibility of collecting from them does not prejudice this plaintiff, it is not inconceivable that in some other case the MVAIC-represented defendant could be highly solvent. Whatever the resolution of the issue at bar, the rule should be, as a matter of public policy, a definite and certain one which does not vary with the solvency of the MVAIC-represented party.
Plaintiff’s contention distills to one of equity and fairness. It could also be argued, however, that it is inequitable to require Con Ed to pay for what is in the main someone else’s wrong. But, more fundamentally, equitable considerations simply have no standing in the interpretation of article 16. Sometimes a statute has inequitable consequences, but if they do not rise to constitutional dimension, and in the court’s view they do not, redress may be sought only from the Legislature. To illustrate, the "No Fault Law” eliminated the right of an injured plaintiff to sue a covered person for special damages not in excess of basic economic loss, but there was no amendment initially to Workers’ Compensation Law § 29, which gave the workers’ compensation insurer a lien for payment of those special damages. That paradox was the subject of the unanimous Court of Appeals decision in Matter of Granger v Urda (44 NY2d 91), rendered on March 28, 1978. In sustaining the lien, the Court commented (at 99): "The instant case, then, poses a problem apparently not contemplated by the Legislature. In enacting the no-fault law, the Legislature chose not to alter the absolute nature of the section 29 lien in favor of a compensation carrier which attaches to the 'proceeds of any recovery’ in favor of a compensation claimant against a third party. At the same time, it also authorized the no-fault insurer to deduct from those benefits payable to an injured employee on account of his basic economic loss any amounts *233 recovered or recoverable as workmen’s compensation benefits. Thus, if both statutes are read literally a harsh, unintended result obtains. The no-fault scheme provides that the no-fault carrier need not pay its insured first-party benefits to the extent that a workmen’s compensation award is recovered or recoverable, while section 29 of the Workmen’s Compensation Law, by failing to limit the applicability of the compensation carrier’s lien on any recovery by a compensation claimant in a third-party action, results in converting the injured employee into a self-insurer for at least a portion of his basic economic loss (see Grello v Gaszykowski, 58 AD2d 412, 428 [concurring opn of Shapiro, J.]). Manifestly, corrective legislative action is advisable, if not imperative.”
The Legislature eliminated the lien almost immediately thereafter. (L 1978, ch 572.)
It is important to keep in mind that we are dealing here with the interpretation of a statute, not with common law. Section 1601 provides that the liability of a joint tortfeasor found to be 50% or less at fault is limited to that defendant’s proportionate share of fault. If equitable considerations were to play a part, the statute’s effect could unravel into uncertainty. (Consider, for example, a case in which there are 11 defendants. One is found 50% at fault and the 10 others are each found 5% at fault.)
If this were an action in equity the court would not be so confined. Moreover, even when dealing with a common-law rule in an action at law, a court should not "ignore and render impotent the rich and vital impact of equity on the common law and, perforce, permit injustice.” (Sharp v Komalski, 40 NY2d 119, 123; see also, United Sys. Assocs. v Norstar Bank, 171 AD2d 922, 924.) That sort of reasoning is inapposite on this statutory issue. In enacting article 16, the Legislature attached an extensive list of exempt situations (CPLR 1602). The instant one is not among them, and it matters not whether that is so because the Legislature overlooked it or rejected it. In short, plaintiffs claim for an equitable exemption over and above those set forth in the statute must fail and the principal amount of her recovery against Con Ed is limited to $150,000, which is 20% of the $750,000 verdict. However, since statutes altering the common law are strictly construed and the statute does not expressly or impliedly address costs, plaintiff may tax a full bill of costs against Con Ed, not merely 20% thereof.

 A similar fact pattern was presented in Massey v City of New York (155 Misc 2d 580) but plaintiff did not raise this issue.