OPINION OF THE COURT
Lucindo Suarez, J.
Motion by plaintiff Hippolito Dominguez to restructure the verdict.
Plaintiff commenced this action to recover for injuries sustained while operating a power stud gun in the course of installing a wall for his employer. Creative Structures, Inc., where a ricocheting stud caused plaintiff to lose a testicle. The gun, purchased by plaintiff for his employer nine years earlier, was manufactured by Fixrammer Corporation and distributed and sold to plaintiff by Barnett Lighting Corporation. After trial, the jury awarded plaintiffs $800,000, and apportioned liability 25% to the employer, 40% to the manufacturer, and 35% to the distributor.
The principal issue in this posttrial motion is what amount must be paid by the remaining defendant distributor, where the defendant employer settled for more than its equitable share, and defendant corporate manufacturer was dissolved before trial. Application of CPLR 1601 pertaining to the limited *870 liability of defendants jointly liable, and General Obligations Law § 15-108 pertaining to releases by other joint tortfeasors, sets defendant distributor’s share of liability as $308,952.
As an initial matter, plaintiffs’ request to increase the distributor’s 35% share of liability by the manufacturer’s 40% of liability, to 75%, upon their claim that they do not have jurisdiction to enforce its judgment against the manufacturer, is without merit. CPLR 1601 (1) provides: "when a verdict * * * in an action * * * for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable * * * and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant’s equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss; provided, however that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he was unable to obtain jurisdiction over such person in said action”.
Plaintiffs cite In re Brooklyn Navy Yard Asbestos Litig. (971 F2d.831 [2d Cir 1992]) in support of their position. Brooklyn Navy Yard offers guidance in the molding of verdicts where both CPLR 1601, which establishes the limited liability of joint tortfeasors for noneconomic loss found to be 50% or less liable, and General Obligations Law § 15-108, which governs the effects of settlements on the liability of nonsettling joint tortfeasors, apply.
Brooklyn Navy Yard (supra) involved hundreds of actions by workers exposed to asbestos. Prior to trial most of the plaintiffs settled their claims. At trial the court gave all parties " 'wide latitude to introduce evidence to establish who substantially contributed to the alleged injuries,’ allowing the defendants 'to argue that the damages were caused at least in part, if not entirely, by other manufacturers not present at trial.’ ” (In re Brooklyn Navy Yard Asbestos Litig., supra, 971 F2d, at 844845.) The jury attributed shares of fault to various bankrupt and nonparty tortfeasors whom plaintiffs were unable to sue for recovery of damages. Since plaintiffs were unable to recover from the bankrupt and nonparty tortfeasors, the District Court reallocated their shares to the trial’s nonsettling defendants. On appeal one of the issues was whether the District Court properly reallocated those shares of fault to the *871 nonsettling defendants. The Court of Appeals affirmed despite the inherent unfairness of holding the nonsettling defendants accountable for more than their share of fault instead of spreading the liability among all culpable parties, finding that a tortfeasor who files a bankruptcy petition is one over whom jurisdiction cannot be obtained because the automatic stay provision of the Bankruptcy Code precludes obtaining effective jurisdiction. The court noted that the nonsettling defendants could seek contribution from bankrupt and absent joint tortfeasors under CPLR article 14.
Brooklyn Navy Yard (supra) appears to address only tortfeasors who are bankrupt or are completely out of a plaintiff’s jurisdictional reach. It does not elaborate under which circumstances tortfeasors remain out of a plaintiff’s reach. Brooklyn Navy Yard is distinguishable from the case at bar. The manufacturer did not file a bankruptcy petition; it dissolved. Its assets were purchased and a new corporation formed. In any event, the manufacturer was properly served with a summons and complaint, and a verified answer was filed. While it may be true that plaintiffs will have to determine how to enforce the judgment against the dissolved or successor corporation, plaintiffs’ characterization that "jurisdiction” to enforce the judgment against the manufacturer cannot be obtained is inaccurate. CPLR 1601 speaks of obtaining in personam jurisdiction of a party in an action, and has nothing to do with enforcement. (Cf., Zakshevsky v City of New York, 149 Misc 2d 52 [Sup Ct, Kings County 1990].)
Moreover, the corporate manufacturer’s sale of its assets and dissolution during the course of the instant action does not preclude it from liability in this lawsuit. Business Corporation Law § 1006 (b) provides that "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution”. Consequently, plaintiffs’ contention that the limitations set forth in CPLR 1601 should be deemed inapplicable is without merit, and the distributor shall not be held accountable for more than its 35% share for noneconomic damages in accordance with the statutory mandate.
The jury returned a verdict in the amount of $800,000, itemized as follows:
past medical expenses 10,000
*872 past pain and suffering 485,660
past lost earnings 80,640
future medical expenses 1,500
future pain and suffering 4,000
future lost earnings 18,200
spouse’s derivative claim 200,000
Total 800,000
Defendant distributor’s liability as limited by CPLR 1601 pertaining to the limited liability of persons jointly liable, and reduced by the set-off provisions of General Obligations Law § 15-108 pertaining to releases by other joint tortfeasors is $308,952. This figure was determined by applying the five-step formula set forth in Brooklyn Navy Yard (supra).
Step 1. Ascertain the CPLR 1601 liability cap for noneconomic losses: $241,381.
CPLR 1601 is concerned only with noneconomic damages: past and future pain and suffering, and the claim for loss of services. The liability cap for noneconomic damages is determined by the addition of those items of noneconomic damages, multiplied by the distributor’s percentage of liability.
past pain and suffering 485,660
future pain and suffering 4,000
derivative claim 200,000
total noneconomic damages 689,660
distributor’s share of liability X 35%
distributor’s maximum liability 241,381
for noneconomic damages
Step 2. Calculate the setoff pursuant to General Obligations Law § 15-108. This is done by multiplying the total verdict by the settling defendant’s share of fault. The setoff is then determined to be the greater of this calculated amount or the amount of the settlement: $310,000.
General Obligations Law § 15-108 (a) provides: "When a release * * * is given to one of two or more persons liable * * * in tort for the same injury * * * it does not discharge any of the other tortfeasors from liability for the injury * * * but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipuleted [sic] by the release * * * or in the amount of the released tortfeasor’s equitable share of the damages”.
*873 total verdict 800,000
employer’s (settling defendant) X25%
share of fault
setoff 200,000
amount of employer settlement 310,000
310,000 is greater than 200,000
therefore, General Obligations Law
§ 15-108 setoff =310,000
Step 3. Subtract the General Obligations Law § 15-108 setoff from the total verdict to determine the amount of liability remaining: $490,000.
total verdict 800,000
total of all releases —310,000
total amount of liability remaining 490,000
Step 4. Determine the amount of economic damages. To calculate economic damages remaining after the settlement setoff, multiply the amount of remaining liability ($490,000) by the percent (13.79%) of the total verdict ($800,000) that the jury deemed economic damages ($110,340): $67,571.
past medical expenses 10,000
past lost earnings 80,640
future medical expenses 1,500
future lost earnings 18,200
economic damages 110,340
economic damages divided by 110,340
total verdict 800,000
equals 13.79%
— total percent economic damages
total amount of liability remaining 490,000
multiplied by % of economic damages X 13.79%
remaining economic damages after 67,571
settlement setoff
Nonsettling defendants are jointly and severally liable for economic damages in the amount of $67,571.
Step 5. To determine the amount of noneconomic damages for which the nonsettling defendants may potentially be held liable, multiply the amount of total liability remaining *874 ($490,000) after the General Obligations Law setoff, by the percent of the total verdict that the jury deemed noneconomic damages (86.21%): $422,429.
total % of damages 100.00%
total % of economic damages — 13.79%
total % of noneconomic damages 86.21%
total amount of liability remaining 490,000
multiplied by % of noneconomic X 86.21%
damages
noneconomic damages for which 422,429
nonsettling defendants may potentially be held liable
Based on these calculations, plaintiffs are entitled to recover $67,571 in economic damages from the distributor and/or the manufacturer, who are jointly and severally liable for that amount. Plaintiffs are further entitled to recover $422,429 in noneconomic damages from the distributor and the manufacturer, but may not recover more than $241,381 of that amount from the distributor, and $275,864 of that amount from the manufacturer. The distributor’s judgment amount is $308,952, and the manufacturer’s judgment amount is $343,435. Therefore, the economic damages amount ($67,571), the noneconomic damage amount ($422,429) and the settlement amount ($310,000) total the verdict amount ($800,000). This calculation assures that the plaintiffs do not obtain a monetary benefit by a settlement amount that is later determined to be more than that settling defendant’s equitable share.
The twist in this case is that both General Obligations Law § 15-108 and CPLR 1601 are triggered. If the settling defendant had not been found to be 50% or less liable, then this case would have presented the least complicated scenario contemplated by General Obligations Law § 15-108, i.e., where there is only one settling defendant and the settlement amount exceeds the settling defendant’s equitable share, then "the nonsettling defendants pay only the difference between the settlement and the verdict, equitably apportioned among them.” (Williams v Niske, 81 NY2d 437, 440 [1993].) However, since both distributor and manufacturer were found less than *875 50% liable, CPLR 1601 triggers a liability cap which limits each tortfeasor’s share of noneconomic damages to 35% and 40% respectively, regardless of the amount of liability remaining after the settlement setoff.
Finally, the applicability of CPLR 1601 bars this court from considering plaintiffs’ inability to collect from the manufacturer. (See, e.g., Washington v City of New York, 160 Misc 2d 230 [Sup Ct, Bronx County 1994] [a personal injury action where plaintiff could not recover from driver defendant because he was insolvent].) The jury verdict apportioned 80% fault to the driver of the car and 20% to the utility company. The plaintiff made an application to make CPLR 1601 inapplicable based on the legal limitations of recovery on the claim against the driver arguing that the utility company should be apportioned more liability. The court stated:
"Plaintiffs contention distills to one of equity and fairness. It could also be argued, however, that it is inequitable to require Con Ed to pay for what is in the main someone else’s wrong. But, more fundamentally, equitable considerations simply have no standing in the interpretation of article 16. Sometimes a statute has inequitable consequences, but if they do not rise to constitutional dimension, and in the court’s view they do not, redress may be sought only from the Legislature * * *
"It is important to keep in mind that we are dealing here with the interpretation of a statute, not with common law. Section 1601 provides that the liability of a joint tortfeasor found to be 50% or less at fault is limited to that defendant’s proportionate share of fault. If equitable considerations were to play a part, the statute’s effect could unravel into uncertainty.” (Washington v City of New York, 160 Misc 2d, at 232-233.)
Plaintiffs also move to increase the award for future pain and suffering from $4,000 to at least $700,000, and to increase the jury verdict from $800,000 to $1,000,000. Distributor cross-moves to set aside the verdict on the grounds that the imputation of a "failure to warn” theory against it is contrary to the weight of the evidence, and that the jury should have apportioned a greater percentage of fault to the employer and some percentage of fault to the plaintiff. Upon review of the record, this court believes there was sufficient evidence to support the jury’s determination and therefore will not disturb it.
The jury’s award for future pain and suffering in the amount of $4,000 is not against the weight of the evidence. Plaintiff’s *876 treating physician, Dr. Arnold Melman, testified that there was no injury to the penis, removal of the damaged testicle removed the pain of the testicle, plaintiff could sustain an erection, and loss of the testicle did not affect normal penile blood flow affecting sexual performance, although plaintiff complained of pain and tests indicated a decrease in penile sensation. Plaintiff’s treating psychiatrist, Dr. Luis Locuratolo, testified that plaintiff stopped requesting medication for his depression, the sexual dysfunction was organic rather than a result of a hormonal or a psychiatric condition, and his episodes of depression were of the type that should not last over two years. Defendant’s urological expert, Dr. Gerald Zilikovsky, testified that any sexual dysfunction would be caused by a fragment, but it had been removed. He criticized Dr. Melman’s paucity of tests and called one into question having entries made in two color ink markings. Plaintiff testified his pain had lessened and that he could not remember taking any painkiller other than Advil or Tylenol within the last two months. Therefore, plaintiffs’ application to increase the jury award for future pain and suffering from $4,000 to $700,000 is denied.
The plaintiffs maintain that the jury actually intended to award plaintiff $800,000 on his claim in addition to the $200,000 awarded to his wife in her derivative claim. The jury returned an inconsistent verdict awarding plaintiffs a total amount that did not equal its respective parts. This was due to the verdict sheet requesting the total amount to be awarded to Mr. Dominguez before the requests for past and future damages. Upon instruction the jury returned a consistent verdict. The jury awarded Mr. Dominguez $600,000 and Mrs. Dominguez $200,000. There is nothing in the record to reflect that the jury intended to return a different verdict. Plaintiffs’ contention that the jury intended to make a larger award is mere speculation.
For the foregoing reasons, it is ordered that:
1. Plaintiffs’ motion to increase award for future pain and suffering is denied.
2. Plaintiffs’ motion to increase defendant distributor Barnett Lighting Corporation’s share of liability to 75% is denied.
3. Defendant distributor Barnett Lighting Corporation’s cross motion to set aside the verdict is denied.
4. Judgment in the sum of $308,952, plus interest from April 19, 1996, shall be entered against Barnett Lighting Corporation.
*877 5. Judgment in the sum of $343,435, plus interest from April 19, 1996, shall be entered against Fixrammer Corporation.