OPINION OF THE COURT
Edward H. Lehner, J.
The central issue now before me with respect to the molding of the judgments to be entered herein is whether this court has “jurisdiction”, as that term is used in CPLR 1601, over corporations that have filed petitions under the bankruptcy laws.
By decision dated May 29, 1997 (173 Misc 2d 121) I resolved all posttrial motions in the five consolidated actions tried before me. However, both parties agreed that the issues with respect to the molding of the judgments would be argued subsequent to the rendering of such decision.
At trial the attorneys stipulated as to the entities which would be listed on the five separate verdict sheets for a jury determination as to the fault of the respective companies. The number varied from a low of 15 in the Gantcher case to a high of 32 in the Venturino case. At the time of trial there was only one nonsettling defendant, Rapid-American Corporation (Rapid). Previously it had been determined that Rapid was responsible for the liability of Philip Carey Corporation (Carey), which company Rapid had acquired in the 1960’s.
In its verdict, the jury found no company (other than Carey) more than 10% responsible for any decedent’s injuries, except in one case in which two companies were each found 20% at fault. The vast majority of the remaining entities were each found only 1% responsible, with a few companies absolved of fault.
Three of the plaintiffs (White, Gentcher and Mangialomini) have stipulated to accept the reduced amounts of the awards provided in my decision (all of which are for noneconomic loss) and now seek the entry of judgment. The legal issue posed on this application revolves about the application of the shares of fault attributed to corporations which have filed for bankruptcy protection.
*821 Discussion
In 1986 the Legislature enacted CPLR article 16, which modified for certain actions the common-law concept of joint and several liability for joint tortfeasors. CPLR 1601 (1) now provides: “Notwithstanding any other provision of law, when a verdict or decision in an action or claim for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable or in a claim against the state and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant’s equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss; provided, however that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action (or in a claim against the state, in a court of this state); and further provided that the culpable conduct of any person shall not be considered in determining any equitable share herein to the extent that action against such person is barred because the claimant has not sustained a ‘grave injury’ as defined in section eleven of the workers’ compensation law.”
This section has received relatively little judicial attention because most tort litigation is excluded from its application by virtue of CPLR 1602. Its provisions had remained in the original form until 1996. In that year, as part of the Workers’ Compensation Law reforms, the language thereof starting with the words “and further provided” was added to exclude from the determination of an equitable share the fault of any employer who could not be sued because the employee did not suffer what is defined as a “grave injury” in section 11 of the Workers’ Compensation Law (L 1996, ch 635).
The provision of CPLR 1601 which creates the controversy herein is that which provides “that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action”.
Here, since Rapid was not found more than 50% responsible for each decedent’s pain and suffering, article 16 applies in all of the cases and eliminates joint liability. Clearly, if the afore *822 said provision were not contained in the section, a finding that a defendant was not more than 50% at fault would result in said defendant only having several liability for that share of the damages. However, the insertion of such provision indicates that the Legislature did not intend to absolutely limit a tortfeasor’s potential liability to the applicable share of fault. Rather, the percentage is required to be increased should a plaintiff establish that jurisdiction could not be obtained over any of the entities to whom the jury attributed fault. For example, if a plaintiff established that jurisdiction could not be procured over corporations to whom the jury attributed 25% of the fault for a decedent’s injuries, then Rapid’s share of the damages under CPLR 1601 would be increased from one half to two thirds thereof. (See, In re Joint E. & S. Dists. Asbestos Litig., 798 F Supp 940, 956-959 [1992], revd on other grounds 995 F2d 343 [1993] [where the sole defendant at trial was found 10% responsible and the share of responsibility of the bankrupts (whom the parties agreed were not subject to the court’s jurisdiction) and others over whom the court lacked diversity jurisdiction totalled 58.5% resulted in the sole defendant’s 10% share being increased to 24.1% (10/41.5)].)
Here plaintiffs argue that they could not procure jurisdiction over corporations in various forms of bankruptcy proceedings by reason of the provisions of 11 USC § 362 (a), which states that a bankruptcy filing
“operates as a stay, applicable to all entities, of—
“(1) the commencement or continuation, including the issuance or employment of process, of a judicial * * * action or proceeding against the debtor”.
Plaintiffs’ contention that a New York State court lacks personal jurisdiction over an entity to whom the statutory stay applies lacks merit. Jurisdiction for a tort committed within the State lies pursuant to CPLR 302. That a party who knowingly commences an action in violation of the statutory stay may, as argued by plaintiffs, be in contempt, does not mean that the State court lacks jurisdiction over the action. Clearly upon application of a debtor, the State action would have to be stayed and the suit could not be processed. It is noted that even in the case upon which plaintiffs heavily rely (In re E. & S. Dists. Asbestos Litig., 772 F Supp 1380 [1991], affd in part, revd in part 971 F2d 831 [2d Cir 1992] [Brooklyn Navy Yard cases]), Judge Weinstein of the District Court wrote (772 F Supp at 1404): “As a technical matter entities which have filed petitions for bankruptcy are subject to suit, but the *823 automatic stay precludes processing a claim against them.” The Circuit Court specifically agreed with this position (971 F2d, at 846) and even though it recognized that a State court may have jurisdiction notwithstanding the existence of the statutory stay, it nevertheless upheld the District Court’s conclusion that the shares of the bankrupt corporations should not be considered in determining share allocations under CPLR 1601, stating (at 846): “Because plaintiffs could not with due diligence obtain effective jurisdiction over the bankrupt parties, the shares of fault attributed to those parties were properly excluded from the Article 16 calculation.” (Emphasis supplied.)
Thus the heart of the Brooklyn Navy Yard decision is that while jurisdiction could be obtained by a State court over a bankrupt entity, since the jurisdiction would not be effective to process the claim, a court should exclude the fault of such entity from the CPLR 1601 determination. While clearly the courts were correct as to the ability of a State court to adjudicate a claim against a bankrupt, the issue before me is whether the intent of the Legislature would be fulfilled if, as was decided in that case, the term “effective” is applied to modify the word “jurisdiction” in CPLR 1601.
In their memorandum of law, plaintiffs acknowledge that the “issue of whether, for the purposes of Article 16, bankrupt entities should be deemed beyond the court’s jurisdiction has never, to plaintiffs’ knowledge been directly addressed in any reported decision by a New York state court”. While Rapid agrees with that statement, it points to cases which have dealt with other aspects of the question, which it suggests should be followed when dealing with bankruptcy.
In Duffy v County of Chautauqua (225 AD2d 261 [1996]), the Fourth Department noted that the term “jurisdiction” in CPLR 1601 “refers to personal rather than to subject matter jurisdiction” (at 267), and stated that although a “fellow servant” could not be sued under the Workers’ Compensation Law, “the statutory bar of the Workers’ Compensation Law does not constitute the inability to obtain jurisdiction as intended by CPLR 1601” (at 266). However, the foregoing was dicta as the Court determined thah article 16 did not apply to the action as it involved a motor vehicle accident, which is exempt from the article by reason of CPLR 1602 (6).
In Rezucha v Garlock Mech. Packing Co. (159 Misc 2d 855 [Sup Ct, Broome County 1993]), it was held that CPLR 1601 does not preclude apportionment of the State’s culpability in a Supreme Court action even though the State can only be sued *824 for a tort in the Court of Claims, noting that the State’s immunity is a limitation on the Supreme Court’s subject matter jurisdiction, and not on its personal jurisdiction.
In Washington v City of New York (160 Misc 2d 230 [Sup Ct, Bronx County 1994]), an apportionment of 20% of a $750,000 verdict to one defendant was held to be several even though 80% was apportioned to a party defended through the Motor Vehicle Accident Indemnification Corporation, whose liability was only $10,000. The court observed that although the result may have been inequitable, “equitable considerations simply have no standing in the interpretation of article 16” (at 232).
In interpreting a statute, the following rules, which I find applicable herein, were set forth in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298 [1972]): “Indeed, the ‘primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature’ * * * Whenever such intent is apparent, from the entire statute, its legislative history, or the statutes of which it is made a part, it must be followed in construing the statute * * * While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning * * * the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to * * * Rather, ([t]o effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.’ ” (Citations omitted; emphasis supplied.)
Here I find that it was within the intent of the Legislature to exclude from the article 16 “equitable share” determination the shares of fault of entities which were subject to the statutory bankruptcy stay. Since, as indicated above, it was clearly not the intent of the statute to absolutely limit a party’s liability to the party’s share of fault, I believe that a proper interpretation of CPLR 1601, under the rules of construction set forth above, is to “enlarge” the meaning of the word “jurisdiction” to only apply where there is effective jurisdiction to process a claim.
Having determined that a corporation with respect to whom the automatic statutory stay of 11 USC § 362 applies may be deemed to be beyond the court’s jurisdiction for the purposes of CPLR 1601, I then must determine whether plaintiffs have proven that any of the corporations to whom the jury attrib *825 uted fault were subject to such stay prior to the trial of this action.
The three corporations having filed for bankruptcy protection discussed at oral argument on November 14, 1997 were Johns-Manville Corporation (Manville), Fibreboard Corporation (Fibreboard) and Raymart. Rapid maintains that the statutory stay did not apply to either Johns-Manville or Fibreboard. Upon reorganization Manville had created a trust to handle asbestos claims. While in the Brooklyn Navy Yard cases Judge Weinstein treated the Manville trust as being beyond the jurisdiction of the court, in a later decision (In re Joint E. & S. Dists. Asbestos Litig., at 878 F Supp 473 [1995]) he wrote (at 543) that “the greatest experts in asbestos litigation” who drew up the trust distribution process (TDP) “disagree as to whether the provisions of this TDP will render the Trust a party over whom plaintiffs are unable to obtain jurisdiction within the meaning of NY CPLR § 1601”. Moreover, Rapid has cited to several cases in which the Manville trust was sued. Rapid also asserts that the trust created by Fibreboard Corporation was amenable to suit. No details as to the status of Raymart were provided.
Plaintiffs have provided the court with no proof in opposition to these assertions by Rapid and the record is totally barren on the issue of whether at the time of trial the bankruptcy statutory stay was in effect with respect to these entities or the trusts created by them, or to any other corporation to whom the jury ascribed fault.
Rapid argues that in light of such state of the record, plaintiffs have failed to meet the due diligence burden placed on them by CPLR 1601, and further that they have failed to plead the existence of any exemption from the limitation on liability provided therein.
While plaintiffs never submitted any proof as to which entities the bankruptcy statutory stay applied, it was always clear that there was a legal issue open with respect to the apportionment of the shares of fault of the corporations who had filed for bankruptcy protection. Therefore, plaintiffs will now be given the opportunity to . submit proof on this issue, and a decision on the molding of the judgments is held in abeyance pending a hearing before a Special Referee to hear and report as to which corporations, to which the jury ascribed fault, were subject to a bankruptcy statutory stay at any time subsequent to September 1, 1995. Said date, which was five months prior to the trial of the damages portion of these actions, is selected *826 as I find that plaintiffs could have applied to join any corporation (or trust created by it) as a party defendant if any applicable stay had expired prior to that time and a viable claim existed.
The last issue to be resolved relates to the amount of the offsets to be applied pursuant to General Obligations Law § 15-108, there being no legal dispute with respect to the application of the statute. While the Court of Appeals has resolved that the offsets are calculated on an aggregate basis (Didner v Keene Corp., 82 NY2d 342 [1993]), plaintiffs’ counsel submitted lists, in camera, setting forth the amount received from each settling entity. Although Rapid indicated it would like to know the amount paid by each entity, its counsel recognized that providing such information might breach confidences of the settling parties, and therefore did not object to having the court examine the proofs in camera.
The only proof submitted by plaintiffs with respect to the amounts of the settlements were copies of letters sent to the respective widows stating the amounts of the forwarded checks and a breakdown of the particular settlement. No affirmation was submitted by any attorney, and the attorney who tried the case and argued the motion (Jordan Fox) indicated that he was not personally involved in the settlements, nor was he aware whether any of the reported settlements resulted from a bulk settlement with a defendant whereby the defendant resolves a group of cases and leaves it to plaintiffs’ counsel to determine a procedure for an allocation among the plaintiffs, which procedure apparently sometimes involves a Master appointed by the court. Plaintiffs’ counsel expressed great umbrage that Rapid was questioning the aggregate amounts of the settlements he reported to the court, and when the inquiry was as to why no copies of letters from defendants forwarding checks indicating a breakdown of the settlement was submitted, Mr. Fox said (transcript, at 82) “I don’t know what to tell your Honor. I could maybe manufacture those letters.”
While Mr. Fox essentially argued the issue as a matter of trust in his representations, since the amount of each judgment to be entered against Rapid depends on the total sum of settlements obtained by each plaintiff, Rapid’s counsel has an obligation to the client to be secure as to the accuracy of the representations made by opposing counsel, and a court has to make a determination on the issue. Such decision, like any judicial adjudication, requires adequate proof of the facts in issue, which to date has not been proffered.
*827 While neither party submitted any authority on the procedure to be followed on the type of issue, I will require an affidavit of an attorney, with knowledge of the facts relating to the settlements, setting forth the amounts of each settlement obtained for each plaintiff. I would expect (unless a valid reason for not doing so is offered) that there would be attached thereto letters from defendants forwarding settlement checks stating the amounts thereof (from which could be redacted portions thereof that do not relate to the plaintiffs herein). If any of the settlements result from a bulk settlement with a defendant, counsel should state how the portion thereof allocated to each plaintiff was determined. If plaintiffs’ counsel makes a representation that the amount paid by any corporation in settlement is confidential, the proof submitted will be sealed.